IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| MICHE BAG, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>THIRTY ONE GIFTS LLC, a New Jersey limited liability company,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER<br><br><br><br>Case No. 2:10-CV-781 TS |

This matter is before the Court on Plaintiff Miche Bag, LLC's Motion for Temporary Restraining Order and Preliminary Injunction. The Court heard argument on the motion on September 9, 2010. Despite being served with a copy of the motion and a notice of the hearing, Defendant did not appear nor otherwise respond. The Court finds that Plaintiff has met its heavy burden to establish the need for immediate injunctive relief and will grant the motion for a temporary restraining order.

I. INTRODUCTION

Plaintiff Miche Bag, LLC ("Miche Bag") sells a line of handbags that enable the user to change the look of the handbag by changing the outer cover. To this end, Miche Bag has obtained U.S. Patent No. 6,186,201 ("the '201 Patent"). Miche Bag alleges that Defendant

1

Thirty One Gifts LLC ("Thirty One") sells products which infringe the '201 Patent. Miche Bag has brought suit against Thirty One alleging patent infringement and now seeks a temporary restraining order.

## II. DISCUSSION

Under both Tenth Circuit and Federal Circuit law, the Court is to consider the following factors when determining whether to issue injunctive relief: (1) the likelihood of the moving party's success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest.[1]

### A.  LIKELIHOOD OF SUCCESS

In order to demonstrate a likelihood of success on the merits, Plaintiff must show that, "in light of the presumptions and burdens that will inhere at trial on the merits,"[2] (1) that Defendant infringes on the patent; and (2) Plaintiff's infringement claim will likely withstand Defendant's challenges to the validity and enforceability of the patent.[3]

#### 1.  *Infringement*

An assessment of the likelihood of infringement requires a two-step analysis.[4] First, the Court determines the scope and meaning of the patent claims asserted.[5] Second, the properly

---

[1] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009); *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1298 (Fed. Cir. 2009).

[2] *Amazon.com,Inc. v. Barnsandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

[3] *Id*.

[4] *Oakley, Inc. v. Sunglass Hut Intern.*, 316 F.3d. 1331, 1339 (Fed. Cir. 2003).

[5] *Id*.

construed claims are compared to the allegedly infringing device.[6] This second step "requires a determination that every claim limitation or its equivalent be found in the accused device."[7]

### a. Claim Construction

Claim construction is the first step in an infringement analysis.[8] The Supreme Court, in *Markman v. Westview Instruments, Inc.*,[9] held that claim construction is a matter exclusively within the province of the court.[10] "It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history."[11] In keeping with this well-settled precedent, the Court will begin with evaluating the claim language itself.[12]

Claim terms are generally given their ordinary and accustomed meaning as understood by one of ordinary skill in the art.[13]

> In some case, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely

---

[6]*Id.*

[7]*Id.*

[8]*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

[9]517 U.S. 370 (1996).

[10]*Id.* at 372.

[11]*Vitronics Corp.*, 90 F.3d. at 1582.

[12]*Dow Chemical Co. v. Sumitomo Chemical Co., Ltd.*, 257 F.3d 1364, 1372 (Fed. Cir. 2001).

[13]*Id.*

3

accepted meaning of commonly understood words. In such circumstances, general purpose dictionaries may be helpful.[14]

A patentee may choose, however, "to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history."[15] "Thus, . . . it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning."[16] "[Lastly], the court may also consider the prosecution history of the patent, if in evidence."[17]

Plaintiff alleges that the infringing products infringe at least claims 1 and 8 of the '201 Patent. Claim 1 states:

> A handbag system comprising;
> a first outer shell having an open end;
> a second outer shell having an open end;
> at least one first fastener attached to at least two interior surfaces of said first outer shell;
> at least one first fastener attached to at least two interior surfaces of said second outer shell;
> an inner bag having an open end;
> at least one second fastener attached to at least two exterior surfaces of said inner bag;
> where said inner bag is placed within said first or said second outer shell so that the first fastener engages the second fastener, such that the inner bag can be removed from the outer shell by disengaging the first fastener from the second fastener.

---

[14]*Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).

[15]*Vitronics Corp.*, 90 F.3d at 1582.

[16]*Id.*

[17]*Id.*

Claim 8 states:

A handbag comprising:
an outer shell having an open end;
at least one first fastener attached to at least two interior surfaces of said outer shell;
an inner bag having an open end;
at least one second fastener attached to at least two exterior surfaces of said inner bag;
where said inner bag is capable of being placed within said outer shell so that the first fastener engaged the second fastener, such that the inner bag can be removed from said outer shell by disengaging the first fastener from the second fastener;
wherein said first and second fasteners are selected from the group consisting of hook and loop fasteners, magnetized materials, buttons and zippers.

In reviewing claims 1 and 8, at this stage of the proceedings the Court finds that the claims use language in its ordinary, rather than technical, sense and that to construe these claims "involves little more than the application of the widely accepted meaning of commonly understood words."[18] The claim language that must be construed before the accused device can be properly evaluated includes: "shell," "open end," and "hook and loop fasteners." In Plaintiff's memorandum supporting this motion, Plaintiff offers definitions of each of these words which the Court finds appropriate at this stage of the proceedings and will adopt for purposes of this motion.[19] Plaintiff proposes the following construction for shell: "an external case or outside covering."[20] Plaintiff proposes the following construction for open end: "at least one facet with

---

[18] *Phillips*, 415 F.3d at 1314.

[19] The Court notes that at this preliminary stage in the proceedings, especially in light of the fact that no response has been entered by the opposing party, the claim construction put forth by the Court in this Decision is neither final nor binding upon later proceedings. *See Jack Guttman, Inc. V. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) (noting that a court may "engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves").

[20] Docket No. 10, at 6.

an opening capable of receiving an inner bag."[21] Finally, Plaintiff proposes the following construction for hook and loop fasteners: "a fastener comprising a hook that fits into a loop for connecting one material to another."[22] The Court will now compare this claim language to the accused device to determine whether there is a substantial likelihood of infringement.

        b.        *Comparison of the Claim to the Accused Device*

Comparing the elements of Claims 1 and 8 to the accused device, the Court finds that Plaintiff has shown a substantial likelihood of success on the merits. Having compared claims 1 and 8 of the '201 Patent to the accused device,[23] the Court finds that the infringing product infringes upon each claim limitation in these two claims.

    2.        *Validity of the '201 Patent*

If Defendant raises "a 'substantial question' concerning validity, enforceability, or infringement . . . the preliminary injunction should not issue."[24] "The showing of a substantial question as to invalidity . . . requires less proof than the clear and convincing showing necessary to establish invalidity itself."[25]

---

[21]*Id.* at 6-7.

[22]*Id.* at 7.

[23]*See id.*, at 8-10 (comparing Claim 1 language to photographs of Defendant Thirty One's device) and 12-13 (comparing Claim 8 language to photographs of Defendant Thirty One's device).

[24]*Genetech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997).

[25]*Abbott Laboratories v. Adrx Pharmaceuticals, Inc.*, 452 F.3d 1331, 1335 (Fed. Cir. 2006).

Here, Defendant has not raised a substantial question concerning the validity of the '201 Patent and has not overcome the presumption of validity contained in 35 U.S.C. § 282.

B.   IRREPARABLE HARM

Plaintiff alleges that it will suffer irreparable harm as a result of price erosion, loss of market share, harm to its reputation, and a loss of business opportunities.[26] The Federal Circuit has held that such factors can constitute irreparable harm.[27] The Affidavit from Plaintiff's CEO supports a finding of such harm in this case.[28] Therefore, the Court finds that Plaintiff has shown that it will suffer irreparable harm if an injunction is not issued.

C.   BALANCE OF HARDSHIPS

Plaintiff must also demonstrate that the irreparable harm the moving party would endure without injunctive relief outweighs any irreparable harm the nonmoving party would suffer as a result of the injunction.[29] For the same reasons discussed above, Plaintiff has shown that the balance of the hardships weighs in favor of issuance of a temporary restraining order.

---

[26] Docket No. 10, at 16-18.

[27] *See, e.g.*, *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001) (likelihood of price erosion and loss of market position are evidence of irreparable harm); *Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed. Cir. 1996) (loss of revenue, goodwill, and research and development support constitute irreparable harm); *Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996) (loss of market opportunities cannot be quantified or adequately compensated, and is evidence of irreparable harm).

[28] Docket No. 8, at Ex. 1.

[29] *See Autoskill v. National Educational Support Sys.*, 994 F.2d 1476, 1498 (10th Cir. 1993).

D. PUBLIC INTEREST

"Typically, in a patent infringement case, although there exists a public interest in protecting rights secured by valid patents, the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the granted of preliminary relief."[30] No such interest has been identified here. Therefore, the Court finds that Plaintiff has shown that it is in the public interest to issue the Temporary Restraining Order.

III. CONCLUSION

Having considered the above factors of a temporary restraining order, the Court finds that a temporary restraining order should be issued here. Plaintiff has shown a reasonable likelihood that it will prevail on its infringement claims. Further, no argument has yet been offered that the '201 Patent is somehow invalid or unenforceable. Plaintiff has sufficiently demonstrated that it will suffer irreparable harm if the temporary restraining order is not issued and such harm outweighs any detrimental effect such an order will have on Defendant. Finally, there is no critical public interest that will be injured by granting injunctive relief.

It is therefore,

ORDERED that Defendant Thirty One, its officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with any of them, are hereby enjoined from manufacturing, distributing, selling, offering for sale, importing, or otherwise using in commerce handbags with interchangeable covers which infringe the '201

---

[30]*Hybritech Inc. v. Abbot Laboratories*, 849 F.3d 1446, 1458 (Fed. Cir. 1998).

Patent—specifically the Thirty One Skirt Purses, Thirty One City Skirt Purses, Thirty One Fitted Purse Skirts, and Thirty One City Fitted Purse Skirts.[31]  It is further

ORDERED that Plaintiff provide security in the amount of ten thousand dollars ($10,000.00).  This Order will be effective upon Plaintiff's posting of the required security and expire fourteen days (14) thereafter.  It is further

ORDERED that a hearing on the Motion for Preliminary Injunction is set for September 24, 2010 at 3:30 p.m., to be held at the United States District Court, District of Utah, 350 South Main Street, Room 142, Salt Lake City, UT 84101. It is further

ORDERED that Plaintiff serve Defendant with a copy of this Order and notice of the hearing on the Motion for Preliminary Injunction and file proof of service with the Court.

DATED September 13, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[31] *See* Docket No. 10, at 4 n.1.